The next case on the calendar is Frago v. Parole Officer Kelsic. Good morning, Your Honors. May it please the Court, Benjamin Schatz of Manat, Phelps & Phillips as appointed pro bono counsel for appellant Linda Frago. The warrantless search of Frago's home by the parole officers violated the Fourth Amendment because the officers had no justification to enter her home and search it over her objection. The district court's ruling was premised on the analysis that the parole officers could reasonably believe that Frago's home was also the home of her estranged husband and the parolee, Wallace. But the facts don't bear that out. This is a summary judgment case. What was his home? What home did he have? Well, he was assigned to housing by the parole office. He never went to. Which he never went to. So he went to his ex-wife's house and stayed there. Why isn't that reasonably considered by the police to be his residence? Well, they don't know where he was. We don't know where he was for that time period. The only thing that we do know was that there was a neighbor of Frago's who talked to the police and said that he would come and go, and that language is very important because that's not how you speak of a resident. And this is someone that lives in the same building. He's only been there. Someone going in and out of the building. In many of these cases, you have an informant that says, so-and-so lives there, so-and-so resides there. We see him all the time. This was from an informant in the same building. It's a two-unit structure, saying, well, he comes and goes. And that was about a period of only about a week, right? Well, yes, but that's actually quite important. That was my next point. If the police didn't hear back from him for almost eight days, it's hard to tell exactly when. But if he was actually living there, it's strange that Savino wouldn't have called the police earlier. Why would it take him eight days to recognize that somebody else is living in this same structure? He didn't call the police at all in the first instance. They went to stake out this location as one of these possible places and saw him getting in his truck or whatever and stopped him. And that's when the police or the parole officers get their first indication of where Mr. Wallace is from this resident. And then they tell him, well, call us back if you see him again or something like that. And he says, well, he's there now. No, no, no, there was an eight-day gap. He said, okay, I'll call you when he's there.  So now if Wallace were actually living in that house that whole time, you would think Savino would have called a lot earlier. He might. On the other hand, it's not his job to do this. He's a volunteer. If he's asked by the parole officers to call, I don't know what he does for a living or what else he does with his life. But presumably doing surveillance on Mr. Wallace is not his job. That's right. But all inferences in this case have to be drawn in favor of Frago. Didn't the parole officers also go to other locations where they thought Mr. Wallace might turn up or might go for a residence and found out he wasn't there? They did. They had several addresses they checked, and he wasn't at any of them when they looked. Did they have evidence through the window of the fact that there was a man in the house or at least some clothing or something that they saw? No, that's not a valid fact that can be used. The district court used that because Frago's testimony was that that window was closed and there were blinds, and there was no way anybody could see in. And even the state doesn't try to use that in their brief as one of the factors. Let me ask you this, though. Let's assume getting past that issue, you have a situation where he's in the house and she says you can't come in to the cops, and then they go in anyway over her objection. Is this the Georgia against Randolph case in which you have two people there, one of whom objects, the other says it's okay, and then the police can't go in? Well, that is one important precedent. But that case did not involve a parole situation. That's true. And so there were no special needs circumstances here. And in a sense, you could view her as harboring a parole violator. Except that when the police showed up for him, she went down to tell him, hey, they're here for you, and he walked out. Then they arrested him outside the house, and that's really the key point. By arresting him outside the house, the officers no longer had justification to go inside the house, which they knew was Frago's. They had justification to be concerned that maybe there was a parole violation somehow. They don't just stop their investigation at that point. They're allowed to continue investigating, aren't they? Well, but they can't investigate somebody's home over that homeowner's refusal to allow them to come in. This was not a situation of exiting circumstances. There was no urgent need to ---- Normally a special need, there's a New York, the Huntley case, I think, and others indicate that there's a special needs exception that requires, that permits an officer to go in, to look at, not to do a complete search, but to go in and see if there's anybody who could be harmed or whether there might be a possible parole violation. That's for the parolee's residence. And the whole point here is that there wasn't sufficient evidence to believe that this home, which they knew belonged to Frago and to Disney, was Wallace's residence. He was just a visitor. That's the most that they could have determined. He did know he had been recently released, had not reported to the residence he was supposed to report to, was not at three other residences he had some association with, that he was coming and going from the home of his ex-wife and his daughter, even though he was not supposed to be in contact with either, and that he was there at 730 in the morning. That seems to me some reasonable basis to conclude he was released and now he's living there. Well, that's the only evidence that he happened to be there at the time. Under that analysis, wherever they happened to find him, they could say, oh, well, that's his home, so we get to search it. And that completely ignores the rights of the homeowner, the third party, who just happens to have a parolee as a visitor. And that can't be right, that that opens up somebody's home. Suppose there were stronger evidence that it was his residence, enough to satisfy you that, well, that's probably where he was living during this entire period since he'd been released from prison. What would be the status of the fact that someone else owns or is the lessee of that property? In other words, is this really a George v. Randolph situation because some of the cases refer to the parole exception as hinging on this somewhat coerced consent by the parolee, or is the parolee's residence subject to search regardless of whether the parolee consents? That is an undetermined question. But I think that the better precedent may be the Peyton-Steagall line of authority that says that the officers need a warrant to enter a third party's home to search for a guest, and that's all that they've got here. And by arresting him outside the home, they don't have any of the usual justifications for going inside somebody else's home, nor was it, of course, incident to the arrest because the arrest was outside. The other important point I have to make is that even if there was a justification to enter, the search that was made inside the home was plainly excessive. They searched all of the rooms. They went into the daughter's room, shut the door. They opened her dresser and took out a bra. None of that has any basis. If they were permitted in the house but it was excessive, as you're saying, if that was the level of analysis, what is the privacy right that is being asserted? It's the daughter's privacy right, but she's not involved here. But the home is leased by the parent, and the parent suffers a Fourth Amendment violation if any room in the parent's house is searched. You can't say, oh, well, that's the minor's room, so the parent has to leave. You're leaving the excessive out of it. Yes. I'm not talking about excessive force. I'm talking about the excessive nature of the search. The state's brief says— If they hadn't gone in the daughter's room, would that be okay?  If they hadn't gone in the daughter's room, would that be excessive? Would the search have been excessive under those circumstances? It depends on what they do. And Frago's testimony was that they searched through the rooms, and particularly Disney's belongings. And the state's brief says, oh, well, this was just a brief visual inspection. They went in to make sure the daughter was okay, and they left. But that testimony was given by two officers who claimed that they didn't go into the home. So there's no basis for that. They don't know what happened inside the home when they claimed that they never went in. So, you know, the state's story that, well, there was just a brief visual inspection here, so there's no problem, that doesn't hold up. And I'll reserve time for rebuttal. Thank you. May it please the Court, Eric Del Pozo for the parole officer defendants. The excessive force claim was forfeited. As we note in our brief, we didn't hear anything about it just now, and so I'd like to focus on the unlawful search claim. The award of summary judgment based on qualified immunity should be affirmed for either of the two theories invoked in tandem by the district court. And the simplest route is through the holding that this was an arguably lawful resident search of what the officers could reasonably believe was Mr. Wallace's shared residence with Ms. Frago. They only needed a reasonable belief, not probable cause or strong evidence. That's from the standard from Moore v. Vega. That standard was satisfied here. The parole officers got a tip that Mr. Wallace was coming and going. This was two or three days after Mr. Wallace was released from jail, not a weekend. And then got another tip from the same upstairs neighbor, a reliable witness. If you have two residents, one of whom is objecting, isn't that George v. Randolph? It is. But on the other hand, that wasn't in a parole context. I don't know if you're drawing a distinction in that. We do, and that was the next thing I was about to say, Judge Walker. George v. Randolph was an explicit consent search not involving a parolee. Mr. Schatz has cited only one case. I think it is a district court case from Wisconsin extending George v. Randolph to the parole context. At a bare minimum, the law is not clearly established that Randolph does apply to parole and that fact supports qualified immunity. If we properly consider the testimony that there was clothing reported to be in the house as part of the cause they had to believe it was his residence, or is there a disputed issue of fact about that? There is a factual dispute. It wasn't Ms. Frago's deposition testimony. It was Mr. Wallace's affidavit that he submitted that the blinds were closed. But even without that fact, there's enough evidence to support a reasonable belief, as this court recently held in Bohannon, an analogous case about executing a search warrant. This isn't a particularly demanding standard. The purpose of a search is justified by the parole exception. It always has to be reasonable in scope and rationally related to the special needs of parole, and here it was. What gets them into the daughter's dresser drawers? Nothing in particular, Judge Lynch, but it was never, mind that fact, an otherwise reasonable and focused search. The special needs of parole, to Judge Walker's question, don't vanish upon a parolee's arrest. In fact, they were heightened here because the parole officers needed to know whether the daughter was in the house. They said what they wanted to know was, is the daughter really in the house? Is she safe? Are there other minors in the house? You don't look for children in somebody's, in another child's underwear drawer, right? Well, you do look for children in that child's room. Yeah, and they found her in the room and had whatever discussion they felt they needed to have with her. Can they search all of her belongings? If there were a special need on the facts of the case, then they could. I won't comment on a case that isn't this one. Well, but what about this one? In this one, the testimony is they took underwear out of her dresser. I don't think there's actual testimony that they opened the drawer as opposed to maybe it was open, but they took something out of the drawer and looked inside. Now, that may be a lot smaller a constitutional problem than going into the house in the first place if that was unjustified. But I'm just curious as to what is the special need for that aspect of the search. Well, I can't speak to that or just to – You're not defending it. No, we're not defending it. The allegation was from the daughter's affidavit. She said that one officer lifted a bra off of the dresser and the officers, if they – excuse me, if that were a Fourth Amendment claim, it would be a Fourth Amendment claim of the daughter's – Off the top of the dresser or into the dresser? Off the top of the dresser. Ms. Frago testified that the officers didn't take anything. This wasn't an invasive search otherwise. That's the only allegation. And the district court ruled that this was not – that Frago couldn't pursue a claim based on the privacy interest of her daughter, and Frago didn't challenge that assertion below. No, she didn't, and it was based on the well-settled rule in the circuit that a pro se party can't prosecute another party's rights, even a minor. Now, you might note that Frago has a privacy interest throughout the home that she owns, but this was not an argument she made before the district court. This was not, Judge Livingston, and to the extent that Ms. Frago had a privacy interest in the home, the officers could reasonably believe that that entire home also was Mr. Wallace's, and no law clearly established the invalidity of the search. This court held in the United States against Lovelock that a co-resident doesn't get a sort of veto to block. I make the argument that there was a – after he was arrested, there was no – no search was needed. It was unreasonable to do that. Your point, I guess, is that the daughter was still in the house and they needed to check her out. The officers didn't know whether the daughter was in the house. They had only heard that fact from Ms. Frago at the door. They did know that Mr. Wallace had breached the conditions requiring that he immediately report to his approved housing, that he report to his parole officer, and he had breached what mimicked an order of protection in his parole conditions by being in contact with Ms. Frago. There was that – so there were those three violations that officers conclusively knew once Wallace had emerged, and there was a fourth and arguably the most serious, and that this unpredictable and violent sex offender had been in the house potentially with a 14-year-old girl. So officers needed to verify whether that was the case, not necessarily to prevent future harm to the daughter from Mr. Wallace, he had already emerged, but to figure out whether Mr. Wallace had in fact harmed the daughter, which would then inform any discipline and potentially his efforts at reintegration, albeit them apparently slim. One additional point about Georgia against Randolph, to the extent that this Court wanted to reach that merits question, we think that it demands qualified immunity. Applying Georgia against Randolph in the parole context would be a terrible rule because it would allow roommates not on parole to block otherwise lawful parole searches. We also raise the independent argument that the – even if the officers couldn't reasonably believe that this was Wallace's residence, this was generally an arguably valid special needs search because of the governmental interest we've already talked about in exploring these parole violations. The reasonableness and scope of the search with the potential exception – we're not conceding the point, but the potential exception of lifting a bra off the dresser, which was again the daughter's, right? It's your position that if Wallace hadn't been there, suppose Wallace is just coming home or coming to the house, leave aside whether it's his home or not, and they stop him and arrest him, he's not inside, hasn't been inside, under those circumstances, and the owner of that home is objecting, under those circumstances the police can go in anyway? Would that be true? That would be, Judge Walker, if all of the rest of the facts were the same and the officers were informed that the daughter was in the house, Wallace had been AWOL from both his parole officer and his residence, they could have gone in. So your position is that the officers could go anywhere that the parolee may have been or could be to check for parole violations, notwithstanding an objection on the part of the resident of the house? No, that is not our position. Our position is given the evidence of residence here, that this was Wallace's residence, that the parole officers had a reason or had justification to go in and it didn't matter that he emerged versus that he was coming home if everything else was the same. That's not the boundaries of the rule as far as you're concerned. So if they hadn't established that it was his residence or couldn't reasonably believe that it was his residence, then it would be subject to the normal requirements, notwithstanding that it's a parole violation question. If the officers couldn't, they didn't have that quantum of evidence sufficient to believe that this was also Mr. Wallace's shared residence, we'd be in general special needs balancing. The calculus would be different depending upon whether Mr. Wallace emerged, whether they knew that or they believed that the daughter was there, whether he was coming home. When you say it's special needs balancing, I thought that was tied to the fact that he was a parolee. They could go anywhere with special needs balancing is what you're saying. You're assuming there's a special need? No, that's not what we're saying. Then I'm confused. I'm sorry. I thought that's what you just said. And it's my fault for not being clear. Mr. Wallace on these facts did emerge from the residence and our only position, and we think that the residence theory resolves this case and at a minimum we argue for qualified immunity. And the parolee, who the parole officers have reason to believe has violated the conditions of parole, would emerge from a friend's house, no other connection with the house. You could arrest him in the yard, but unless there was some exigency, you would not be able to enter the home without a warrant. That's right, Judge Livingston. The third party's rights are going to be paramount in most of these cases, but in this particular case, given the seriousness of the violations and the gross repudiation of parole, it's our position that the officers could have prevented it. Given the fact that you say the officers could reasonably believe it was his residence, if it was not his residence, we'd have an entirely different case, wouldn't we? We would, and as long as the belief was reasonable, and that's actually more against vega, whether you want to call it qualified immunity or a simple reasonable mistake of fact. We're in the universe where officers didn't have the evidence to support that reasonable belief, but that's another case. If the court has no further questions, I thank you. The third party's rights should be paramount in the other cases and in this case. The officers here could have simply have asked Frago, is Wallace living here, or they could have asked Savino, is Wallace living there, or they could have asked Wallace after they arrested him, are you living there. They didn't do any of those things. They were never focused on residence. If they asked and the people said no, would that change the objective facts? It would undermine their belief that that, well, their supposed belief now, that that was his home. They have to make an ability assessment. Sure, sure. Just believe him. But they didn't try. Because they weren't focused on trying to determine residency. They just wanted to find this guy and arrest him. And then once they did, they went on to do other things. What they're overlooking is there is such a thing as a homeless parolee. In fact, there are probably very many homeless parolees. And so simply saying, well, wherever we find somebody, we're going to call that his home and now we have reason to enter is not sufficient. But it's not wherever they find him, right? I mean, it's a place where he has been going in and out for several days out of a total of only a few more days that he's been identifiable as being anywhere. I mean, I take your point that somebody could be homeless and then stop in at a friend's house. But when somebody is coming and going from a particular residence for several days and has no other place of abode, why isn't it reasonable to conclude that that's probably where he's living? Well, it might be reasonable. But this gets into what inferences can be drawn from the very limited evidence that's here. And so that's why summary judgment should not have been granted. And the inferences have to be resolved in Frago's favor. And so you can't go too far. But there's two levels, right? We have to draw the inferences in her favor in order to decide what was reasonable for them to think on the evidence available to them. But at that point, we're talking about what's reasonable for them to think. That's the ultimate issue. If there are factual disputes about, for example, whether you could see men's clothing through the window or not, that's something on which she gets the benefit of the doubt. The factual record here is the weakest of any case out there about what you need to have a reasonable belief about somebody's residence. Just not there. And with respect to the bra, which is frankly pretty outrageous, the testimony was that it was lifted from a dresser drawer. So there was clearly some sort of reaching in, some sort of excessiveness in the type of search that was done. And if they were concerned about Disney, all they had to do was ask Frago, is Disney here? Please bring her upstairs. Let us look at her. They were looking through the window of the front door. They didn't need to burst into the home and they didn't need to burst into her room when they knew that she was getting dressed to go to school at 730 in the morning. There was no reason to think that she was in any danger. And the use of continually calling Wallace a violent sex offender to sort of raise the level of animosity in this case, it's totally unnecessary. There's no evidence that Wallace had ever harmed any member of his own family. There's no basis for thinking that Disney was in any danger. Isn't there a domestic abuse charge or something that led to one of the conditions of parole being not just that he not be around minors or not be around Disney, but that he not be around Frago? That's true. Yes, that's correct. Finally, the Moore v. Vega case that was mentioned, I think that's probably the most important case. That is a very good case because in that case, the warrantless search of a third party's home was found to be unreasonable and the qualified immunity was granted to the officers only because there was a reasonable belief that it was the parolee's home and they were trying to arrest him and they thought that he was inside. Here, the key fact is that Wallace was outside the home and that's why they didn't have a right to come in. Thank you. Thank you both. Well argued and thank you, Mr. Schatz, for your service.